IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REGINALD JEROME THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV290 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Reginald Jerome Thomas ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff then protectively filed an application for SSI in November of 2016, alleging a disability onset date of January 1, 1996, later amended to November 10, 2016. (Tr. at 11, 304-

---

[1] Andrew Saul was confirmed as the Commissioner of Social Security on June 4, 2019, and was sworn in on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

312, 324.)[2] His application was denied initially (Tr. at 216-226) and upon reconsideration (Tr. at 230-239). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 240-242.) Plaintiff, along with his attorney and an impartial vocational expert ("VE"), attended the subsequent hearing on August 3, 2018. (Tr. at 120.) The ALJ concluded on October 15, 2018 that Plaintiff was not disabled within the meaning of the Act. (Tr. at 11-20.) On January 22, 2019, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-4.)

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993)

---

[2] Plaintiff previously filed an application for SSI that was denied by an Administrative Law Judge in June 2015, with review denied by the Appeals Council in August 2016, and with no request for judicial review. (Tr. at 11, 150-158.)

Transcript citations refer to the Sealed Administrative Record [Doc. #9].

(quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179. Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust

4

to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity since November 10, 2016, the application date." (Tr. at 13.) Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> lumbar degenerative disc disease, headaches, and a meniscus tear with a history of lower limb fracture.

(Id. at 14.) The ALJ found at step three that these impairments did not meet or equal a disability listing. (Id.) The ALJ then assessed Plaintiff's RFC and determined that he could perform light work, with the following additional limitations:

> the claimant is able to ambulate short distances . . . without a cane; can frequently climb ramps and stairs; can occasionally climb ladders, ropes, and scaffolds; can occasionally balance; can frequently stoop, kneel, crouch, and crawl; must avoid concentrated exposure to hazards such as unguarded machinery and unprotected heights; the claimant must be permitted to change between sitting and standing every 30 minutes although he will remain on task.

(Tr. at 15.) Based on the RFC determination, the ALJ found under step four of the analysis that Plaintiff could not perform any past relevant work. (Tr. at 19.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the VE as to these factors, he could perform other jobs available in the national economy. (Id.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act from November 10, 2016, the amended onset date. (Id. at 20.)

5

Plaintiff now argues that the ALJ erred in a number of overlapping respects. First, Plaintiff contends that "[t]he ALJ err[ed] by failing to include limitations in the RFC resulting from severe migraine headaches." (Pl.'s Mem. [Doc. #13] at 6-15.) Second, Plaintiff asserts that "the ALJ ignore[d] facts in evidence that contradicted the ALJ's conclusion" in "evaluating migraine headaches." (Id. at 15-17.) Third, Plaintiff contends that the ALJ "fail[ed] to discuss and analyze pain properly" by failing to "specifically evauate[] chronic migraine headache pain." (Id. at 17-18.)

A. RFC

As noted, Plaintiff first contends that "[t]he ALJ err[ed] by failing to include limitations in the RFC resulting from severe migraine headaches." (Pl.'s Mem. at 6-15.) "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

Here, the ALJ's assessment of Plaintiff's RFC as it relates to his migraine headaches is susceptible to judicial review and supported by substantial evidence. After noting that Plaintiff

6

suffered from the following severe impairments: lumbar degenerative disc disease, headaches, and a meniscus tear with a history of lower limb fracture (Tr. at 14), the ALJ then pointed to multiple pieces of evidence to support her RFC determination as to Plaintiff's migraine headaches. (Tr. at 15-19.) First, the ALJ generally summarized Plaintiff's own reports to treatment providers, reflecting that Plaintiff was treated for his headaches on only three occasions since the last administrative determination: in March 2015, March 2016, and January 2018. (Tr. at 16-18.) The ALJ's summary further reflects that Plaintiff made multiple other medical visits during the relevant period, without any complaint of headaches. (See, e.g., Tr. at 16-18, 719, 721, 773, 821, 1011, 1061, 1096-97, 1231, 1284, 1312, 1336, 1361; see also Tr. at 33, 40, 44, 49.)

Second, the ALJ also evaluated in detail the medical record for the only time Plaintiff complained to medical providers that he was actually experiencing a migraine during the period of alleged disability (from the November 2016 alleged onset date through the ALJ's October 2018 decision), in January 2018. As noted in the ALJ's decision,

> In January 2018, the claimant presented to the emergency room complaining of migraine headaches and back pain after falling on the ice. There was no tenderness to palpation of the cervical spine or the sinuses. The claimant had full strength and sensation. He ambulated with a coordinated gait. The evaluating physician stated that his evaluation did not show a pathology that would require ongoing or emergency intervention or inpatient treatment.

(Tr. at 18.) According to that medical record, Plaintiff reported that he had not had a migraine in a year (Tr. at 1257), which is consistent with the timeline summarized in the ALJ's decision, reflecting that the last prior treatment for a headache was over a year prior, in March 2016 (Tr. at 16-18, 632). The January 28, 2018 medical record reflects that Plaintiff reported to his medical provider that his migraine was "frontal, throbbing and not exacerbated by light or

7

sound" and "this is typical for his prior exacerbations," with a diagnosis of "other migraine without status migrainosus, not intractable." (Tr. at 16, 18, citing Tr. at 1257-1261.) In light of this record, the ALJ reasonably concluded that "the objective medical evidence shows that these were not classic migraine headaches in that treatment notes indicate that light and sound did not aggravate his headaches." (Tr. at 16.)[3] Thus, to the extent Plaintiff contends that the ALJ should have included a limitation in the RFC with respect to light or sound, the ALJ's decision explains why no such limitation was included, based on the medical record.

Third, the ALJ relied on the prior administrative determination in Plaintiff's earlier case, in accordance with Albright v. Commissioner, 174 F.3d 473 (4th Cir. 1999). Specifically, the ALJ pointed to the prior, final administrative determination reflected in a prior ALJ decision dated June 8, 2015. In that prior determination, the earlier ALJ concluded that "[t]he claimant's headaches appear to be intermittent and relieved with medications. Therefore, . . . the claimant is restricted to medium work with occasional ladder climbing due to his lumbar degenerative disc disease and migraine headaches." (Tr. at 156.) The ALJ in the present case relied on that determination but concluded that additional impairments, particularly Plaintiff's developing knee impairment and worsening back symptoms, warranted adding "additional limitations to the claimant's previous residual functional capacity, but still find[ing] that the claimant is not disabled." (Tr. at 18.) Thus, the ALJ relied in part on the earlier determination

---

[3] With respect to the earlier treatment record, the ALJ noted that the March 2016 record reflected a complaint of a headache with "no acute findings." (Tr. at 16, 630.) That record notes a reported pain of 5/10, dull generalized pain that did not radiate, not stress-related, not worsened by anything, with no visual disturbance and no nausea, also diagnosed as "migraine without status migrainosus, not intractable, unspecified migraine type." (Tr. at 630-32.)

8

that Plaintiff's headaches (and other impairments) were addressed by the lifting and postural restrictions in the RFC.

Finally, the ALJ then evaluated each of the medical opinions in the record and considered each physician's assessment of Plaintiff's ability to work despite his complaints of migraines before announcing the weight she afforded each opinion. In pertinent part, the ALJ explained that state agency physicians Dakota Cox, M.D., and Robert N. Pyle, M.D., (experts in disability review), opined, in relevant part, that Plaintiff could perform medium work and, to account for his migraines, he should avoid concentrated exposure to hazards. (Tr. at 18, citing Tr. at 186-87, 189, 208, 210.) Dr. Cox specifically opined that Plaintiff did not have limitations to temperature, noise, or vibration, but should avoid concentrated exposure to hazards, and the basis for this environmental limitation was Plaintiff's "migraines, hypertension, hyperlipidemia." (Tr. at 187.) Dr. Pyle also specifically opined that Plaintiff did not have limitations to temperature, noise, or vibration, but should avoid concentrated exposure to hazards, and the basis for this environmental limitation was Plaintiff's "migraines, hypertension, hyperlipidemia." (Tr. at 208.) The ALJ afforded some weight to the state agency opinions because they were generally supported by the evidence in the record, but she afforded greater exertional restrictions, finding that Plaintiff should be limited to light work. (Tr. at 15-19.) The ALJ appropriately credited their opinions that Plaintiff should avoid concentrated exposure to hazards, which was specifically based on his migraines as noted above, and the ALJ incorporated this limitation into her RFC finding. (Tr. at 15, 18.) No physician in the record opined that Plaintiff's migraines resulted in greater functional limitations.

Thus, in setting the RFC, the ALJ specifically considered and relied upon the overall medical record, the specific treatment records for migraine headaches, the prior final administrative determination as provided in Albright, and the specific opinion of the state agency physicians. For all of these reasons, the ALJ's analysis was well-supported and susceptible to review.

Plaintiff's arguments to the contrary are not persuasive. He first contends that the ALJ "failed to make any express finding at step 2 concerning whether [Plaintiff] suffers from migraines (as distinguished from generic headaches)." (Pl.'s Mem at 7.) Plaintiff also contends that "the RFC in effect contains no limitations resulting from headaches or migraines" and observes that although the non-examining state agency physicians limited Plaintiff's exposure to hazardous environments, the ALJ only gave their opinions some weight. (Id. at 7-9.) Plaintiff also contends that the ALJ's assessment of his migraine headaches frustrates meaningful review (id. at 10) and argues that his migraine headaches require additional restrictions in the RFC (id. at 12-13 referencing Tr. at 537-538, 770, 778, 964, 1257). None of these arguments warrant remand.

First, it is clear from the ALJ's decision that she considered Plaintiff's migraine headaches a severe impairment throughout the decision. Although the ALJ initially found Plaintiff's "headaches" (rather than "migraine headaches") to be a severe impairment at step two (Tr. at 14), the ALJ immediately explained that Plaintiff was found to have "migraine headaches" in a prior disability decision and that this impairment continued to cause him "more than minimal functional limitations." (Id.) The ALJ then mentioned migraine headaches nearly a dozen times during the remainder of the decision. (Tr. at 14-18.) The ALJ

10

expansively referred to "headaches" and considered and included all of Plaintiff's complaints of headaches, whether or not specifically categorized as migraine headaches. The Court finds no error in this analysis. Moreover, even if there were an error, any error at step two is harmless, because the ALJ thoroughly considered Plaintiff's migraine headaches as a severe impairment and addressed them throughout the decision.

Second, despite Plaintiff's arguments to the contrary, the ALJ did include limitations in the RFC to accommodate his migraines. As noted, the ALJ first considered the medical record, including in detail the medical records related to Plaintiff's migraine headaches. The ALJ also relied on the prior administrative determination, which held that the lifting and postural limitations accounted for Plaintiff's migraines. The ALJ then went further and relied on the opinions of the state agency physicians to include a limitation on Plaintiff's exposure to hazards to account for his migraine headaches. (Tr. at 15-19.) To the extent Plaintiff contends that a limitation on exposure to hazards cannot limit the RFC or is necessarily insufficient to account for limitations related to migraines, the Court finds these contentions unpersuasive.[4] Finally, as discussed above, to the extent Plaintiff contends that the ALJ should have included a limitation in the RFC with respect to light or sound, the ALJ's decision explains why no such limitation was included, based on the medical record.

---

[4] In support of his contention that an RFC limiting a claimant's exposure to hazards is insufficient to account for migraine headaches as a general matter, Plaintiff cites Beard v. Astrue, No. CIV.A. BPG-10-2378, 2011 WL 3880417 (D. Md. Aug. 31, 2011). However, in Beard, the court found that an RFC that limited the claimant's exposure to hazards was actually sufficient to account for that claimant's migraine headaches. Beard, 2011 WL 3880417 at *3-5. Beard therefore stands for the proposition that, in the proper context, limited exposure to hazards is sufficient to account for the limitations attendant to migraine headaches. Of course, the RFC determination is specific to the facts of each case, and the issue in the present case, as in any case, is whether the ALJ's determination here is susceptible to judicial review and whether there is substantial evidence to support the ALJ's determination, as discussed at length above.

Case 1:19-cv-00290-CCE-JEP   Document 16   Filed 06/18/20   Page 11 of 18

Third, the fact that the ALJ only gave "some weight" to the opinions of the non-examining state agency consultants does not warrant remand. The opinions of the non-examining state agency physicians limited Plaintiff's exposure to hazards in an effort to account for his migraines, as discussed in detail above. (Tr. at 18, citing Tr. at 186-87, 189, 208, 210.) The ALJ adopted this restriction in the RFC and the Court is not left to guess as to how this came about or whether it was warranted. (Tr. at 18.) There was no error here.

Fourth, the ALJ's decision as to Plaintiff's migraines does not frustrate meaningful review. As explained, the ALJ addressed migraines roughly a dozen times in her decision. The ALJ's discussion and summary of the record also makes it clear that while Plaintiff did have a history of migraines, and did suffer at least one migraine during the alleged period of disability, there was sparse evidence that they were as frequent or as limiting as alleged. In short, the ALJ's decision is susceptible to judicial review.

B. Contradictory Evidence

In an overlapping continuation of his prior argument regarding his migraines, Plaintiff next asserts that "the ALJ ignore[d] facts in evidence that contradicted [her] conclusion" and asserts further that "[n]owhere in the record does a treating or examining, or even consulting physician state [Plaintiff's] typical migraine [is] not exacerbated by light and sound, or question the diagnosis of migraines." (Pl.'s Mem. at 15-16.) This argument is also unpersuasive.

More specifically, in support of her RFC determination, the ALJ pointed to the treatment note from January of 2018 indicating that Plaintiff was experiencing "a migraine exacerbation . . . but this is typical for his prior exacerbations of frontal, throbbing and not exacerbated by light or sound." (Tr. at 16, 18, citing Tr. at 1257.) These symptoms occurred

12

a few days after Plaintiff slipped and fell on the ice hurting his back, at a time where he had run out of migraine headache medication, and more than a year after he reported his last migraine headache. (Tr. at 1257-1258.) Plaintiff, in pertinent part, was diagnosed with migraine headaches without migrainosus, not intractable. (Tr. at 18, 1261.) He was prescribed headache medicine (Fioricet) and advised to take it. (Tr. at 1261-1262.) Consequently, the ALJ did not ignore this evidence and instead reasonably found that although Plaintiff alleged severe headaches, the evidence did not reflect that they were as disabling as alleged. (Tr. at 16.)

Beyond this, the only example within the relevant period that Plaintiff points to in support of his contention that the ALJ ignored material contradictory evidence is that of a February 2017 consultative examination with Dr. Jairon Downs, M.D., in which Plaintiff points to his own self reporting of migraines. Specifically, Plaintiff reported to Dr. Downs that his migraines occurred "almost daily" and were made worse by bright light. (Tr. at 770, 778.) However, that same consultative assessment points out that Plaintiff had no neurological deficits the day of this exam and reported pain of only 2/10. (Id.) Moreover, the ALJ's assessment of the longitudinal medical record, described above, shows few to no migraine headaches (or headaches at all) during the relevant period. Consequently, the ALJ's determination that the medical record did not fully support Plaintiff's self-reported symptoms was supported by substantial evidence.[5]

---

[5] Plaintiff also objects to the ALJ's observation that an earlier March 2015 doctor visit demonstrated "no focal neurologic deficit [and] [a] head CT scan [that] was negative (Ex. C1F.)." (Pl.'s Mem. at 16 referencing Tr. at 16, 537-551.) Plaintiff asserts that a normal scan when looking for the cause of migraines means nothing. However, the ALJ's accurate description of this scan is not error, and simply provided the available medical information regarding Plaintiff's past complaints of headaches.

13

C. Symptom Evaluation

Plaintiff's last argument is that the ALJ "fail[ed] to discuss and analyze pain properly." (Pl.'s Mem. at 17-18.) As explained below, this argument is also without merit.

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 416.929. In Craig v. Chater, the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms. Craig, 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (emphasis omitted) (citing 20 C.F.R. § 416.929(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about his pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Craig, 76 F.3d at 595.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit his ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical

14

Case 1:19-cv-00290-CCE-JEP   Document 16   Filed 06/18/20   Page 14 of 18

signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 416.929(c)(3):

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [his] pain or other symptoms;
>
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [his] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed his demeanor, her determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 16.) Therefore, Plaintiff's challenge hinges on step two of the Craig analysis.

15

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [his] statements." 20 C.F.R. § 416.929(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017). However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work" and "[a]lthough a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [ ]he suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also SSR 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . .").

According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities . . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . .

SSR 16-3p, 2017 WL 5180304, at *8.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence, and explained that determination in the decision. In evaluating the evidence, the ALJ specifically identified multiple reasons supporting her determination. (Tr. at 16-19.) More specifically as to Plaintiff's migraine headaches, the ALJ referenced Plaintiff's statements, including his testimony that he gets migraines a few times per month, which last several days and require him to find a dark spot with no noise, along with his complaints to state agency physician Dr. Downs that he had chronic headaches "every day." (Tr. at 16-17, 130, 134, 770.)

The ALJ then pointed to specific reasons for partially discounting Plaintiff's testimony as to his migraine headaches. (Tr. at 16-19.) As explained, Plaintiff seldom reported migraine headaches (or any type of headache) during the relevant period (see, e.g., Tr. at 17, 719, 821, 1011, 1231, 1257-1258), he regularly revealed normal sensory and neurological functioning, (see, e.g., Tr. at 16-18, 719, 721, 773, 821, 1011, 1061, 1096-97, 1231, 1284, 1312, 1336, 1361), and the migraine headache(s) he did experience during the relevant period were not typically sensitive to noise or light (see e.g., Tr. at 16, 18, citing Tr. at 1257-1261). Additionally, the non-examining state agency physicians also opined that Plaintiff's migraine headaches could

17

Case 1:19-cv-00290-CCE-JEP   Document 16   Filed 06/18/20   Page 17 of 18

be addressed by limiting his exposure to concentrated hazards, which the ALJ accommodated in the RFC determination. (Tr. at 18, citing Tr. at 186-87, 189, 208, 210.) All this is sufficient evidence to support the ALJ's assessment of Plaintiff's subjective symptoms.

Ultimately, the ALJ's decision as it relates to Plaintiff's migraine headaches is susceptible to judicial review and supported by substantial evidence. Plaintiff has not identified any errors that require remand, and the ALJ's decision should be affirmed.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 18th day of June, 2020.

                                             /s/ Joi Elizabeth Peake
                                             United States Magistrate Judge